■ In the Matter of BOBBY M. SHEILA M., Respondent; PHYLLIS SHEARER, as Deputy Commissioner, Westchester County Department of Social Services, Appellant. — In a proceeding pursuant to article 10 of the Family Court Act, petitioner appeals from an order of the Family Court, Westchester County (Kaiser, J.), dated February 7, 1984, which, after a hearing pursuant to section 1028 of the Family Court Act, *inter alia,* directed petitioner to return Bobby M. to his mother pending determination of the petition. ¶ Order reversed, without costs or disbursements, application pursuant to section 1028 denied, and matter remitted to the Family Court for further proceedings consistent herewith. ¶ In early July, 1983, the Department of Social Services commenced this child protective proceeding. Her child having been temporarily removed from her physical custody, the mother applied under section 1028 of the Family Court Act for return of the child pending a final determination of the

abuse petition, and the Family Court granted the application. The Department of Social Services appeals. By order of this court, the Family Court's order has been stayed pending the appeal. ¶ On July 6, 1983, the child, who was then seven weeks old, was brought by his mother to a hospital and was found to be suffering from a broken upper right arm bone, a broken left clavicle bone, and "failure to thrive" syndrome. The mother informed the hospital personnel that the infant had hurt himself by falling off a mattress and box spring that was placed on the floor. However, the attending pediatrician testified that it is unlikely that the child's arm injuries could have been sustained in such a manner. Rather, the presence of fractured bones in both the right and left arms indicated that the injuries were caused by a considerable twisting or wrenching force. In addition to the fractured bones and "failure to thrive" syndrome, the child was diagnosed as suffering from a congenital coarctation of the aorta which was causing congestive heart failure and which would get worse if not corrected. After his release from the hospital, the child was placed in a high level care foster home and was expected to undergo surgery for his heart condition in February, 1984. The physician testified that, after surgery, the child will require constant and extensive care and monitoring, exceeding the ordinary level of care necessary for a healthy child his age. He further testified that, during the infant's initial nine-day stay at the hospital, the mother would often sleep in the child's room during feedings and medical procedures and while the baby cried. The Child Protective Services caseworker, who was assigned to the case upon the child's initial admission to the hospital, and who, accompanied by the mother, drove the child two or three times each week to a hospital for out-patient treatment for the heart condition, was unequivocally of the opinion that the mother cannot provide the child with the care that he needs and that a return of the child to the mother would present an imminent danger to his health. In contrast, a physchiatric social worker to whom the mother was referred by the Child Protective Services testified that the mother was well motivated and capable of caring for her child. However, he had never observed the mother and child together. ¶ The Family Court, although expressing grave misgivings about the cause of the child's arm injuries and about the child's cardiac condition, was, apparently, swayed by the testimony of the psychiatric social worker and ordered the return of the child to the mother. To safeguard the child's health, however, the court also ordered, *inter alia,* that the mother meet with the child's attending physician to be instructed as to his proper care, that the mother cooperate with the Department of Social Services pending final determination of this matter, that the Department of Social Services arrange for a Public Health Service nurse to become involved in the care of the child, that the mother attend every appointment relating to the care and treatment of the child, and that the mother cooperate with the SCAN program as arranged by the Department of Social Services. ¶ While these safeguards may be adequate to protect the infant's health with respect to the cardiac condition and "failure to thrive" syndrome, given the serious nature of the traumatic injuries suffered by the child, a return to the mother presents an imminent risk to the infant's health. Therefore, the section 1028 application should have been denied (see Family Ct Act, § 1028, subd [b]). The uncontroverted testimony at the hearing indicated that the mother's explanation for the child's injuries was unacceptable. Section 1046 (subd [a], par [ii]) of the Family Court Act provides: "In any hearing under this article * * * proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for care of such child shall be prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible". In light of the evidence of abuse

and/or neglect of this child, the safer course is not to return the child to his home until further facts are adduced (see *Matter of Jasmine H.*, 88 AD2d 996, 997; *Matter of Corey T.*, 81 AD2d 785, 786). Because the mother has now been separated from her child for about one year, we direct that the matter be set down for an immediate hearing. Pending resolution of the petition, the Family Court should arrange for appropriate supervised visitation between the mother, child, and other family members, as well as continued involvement by the mother in the child's health care. This decision relates solely to the mother's section 1028 application and should not be taken as any indication of what determination should be made by the Family Court Judge as to the abuse petition. Mollen, P. J., Gibbons, Weinstein and Rubin, JJ., concur.