■ JUANITA HUNTER, Respondent, et al., Plaintiff, v PIROSKA L. SZABO, as Administratrix of the Estate of NICHOLAS A. B. SZABO, Deceased, Appellant.—In a medical malpractice action to recover damages for personal injuries, etc., the defendant appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Nassau County (Levitt, J.), dated February 8, 1984, as is in favor of the plaintiff Juanita Hunter in the sum of $275,587.26, upon a jury verdict.

The original defendant died prior to the argument of the appeal, and, on June 27, 1985, letters of administration were granted to Piroska L. Szabo. Said administratrix is substituted as the party appellant and the caption is amended accordingly.

Judgment reversed, insofar as appealed from, on the facts, with costs, and a new trial granted as to the plaintiff Juanita Hunter.

The plaintiff Juanita Hunter was employed as a nurse's assistant at the Community Hospital at Glen Cove on January 15, 1977, when she injured her right leg while attempting to break a patient's fall. She was examined at the hospital emergency room, and an Ace bandage was put on her right ankle. Mrs. Hunter returned to the emergency room five days later, on January 20, 1977, with a complaint that her right hip was bothering her, and returned again on April 11, 1977,

complaining that the pain in her hip had worsened. On that latter occasion, she was referred to Dr. Nicholas A. B. Szabo, a board-certified neurosurgeon, who had her admitted to the hospital and performed a myelogram.

At the trial, it was Mrs. Hunter's position that she was severely injured when, during the myelogram, the fluoroscope machine hit her in the lower back and struck the needle which had been inserted to inject contrast dye into her spinal column. Mrs. Hunter testified that when she felt the impact of the machine she screamed and felt pain from her neck all the way down the *left* side of her body, and that, in fact, after the myelogram, the pain that she had been experiencing on the right side of her body had shifted to her left side. Mrs. Hunter testified that she returned to work upon her discharge from the hospital, but soon thereafter had to quit her job because of the severe pain on her left side.

In support of their position, the plaintiffs presented at trial, *inter alia* the testimony of an internist who had never performed a myelogram. This expert testified that nerve damage to Mrs. Hunter's left side was demonstrated by the hospital records of another hospital which she had entered for further tests in 1980 or 1981, and which indicated that at that time she walked with a neuralgic limp to the left. According to the plaintiffs' expert, the pain on Mrs. Hunter's left side was causally connected to the myelogram incident, but he admitted that his opinion was based solely on the temporal proximity of that procedure to the alleged shifting of Mrs. Hunter's pain from her right to her left side, and he conceded that nothing else indicated that nerve root damage had occurred during the myelogram.

In contrast, Dr. Szabo and his expert witnesses, who were all well qualified, testified, after examining the preincident and postincident X rays taken during the myelogram procedure, that, given the angle and depth of insertion of the needle, it would not have been possible for the needle to have hit and damaged a nerve root on the left side even had it been struck by the fluoroscope machine, and further, that even if a nerve had been hit, any resultant pain would have been transient. There was also testimony by a neurosurgeon who examined Mrs. Hunter in 1981 to the effect that her involuntary reactions did not substantiate her subjective complaints.

The jury subsequently returned a verdict in favor of Mrs. Hunter, finding that the injuries had been caused by the fluoroscope machine striking the myelographic needle.

It is axiomatic that in a malpractice action, expert testimony generally is necessary to enable the jury to determine the issue of negligence *(see, e.g., Pipers v Rosenow,* 39 AD2d 240).* Viewing the record in its totality, we find that the verdict was against the weight of the evidence. Only the barest possible causal connection between the myelogram incident and Mrs. Hunter's alleged injuries was made out, in contrast to the very strong case presented by Dr. Szabo. Accordingly, the verdict cannot be permitted to stand, and the matter must be remitted for a new trial. Lazer, J. P., Bracken, Niehoff and Kooper, JJ., concur.