■ In the Matter of LAHRICK L. and Others, Children Alleged to be Abused. LYDIA L. et al., Respondents; COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant.—In proceedings pursuant to Family Court Act article 10 for adjudications as to whether certain children are abused or neglected, the appeal is from an order of the Family Court, Kings County (Rand, J.), dated September 24, 1985, which, after a hearing, dismissed the petitions.

Order reversed, without costs or disbursements, and matters remitted to the Family Court, Kings County, for a de novo fact-finding hearing before a different Judge. In the interim, Lahrick L. is to remain in the custody of his paternal grandmother, and Michelle C., Angelique C., Omega C., and Althea C. are to remain in the home of the respondents under the supervision of Special Services for Children.

On January 9, 1985, the infant Lahrick L. was hospitalized with extensive first and second degree burns to both of his legs, his feet and his right arm. The New York City Commissioner of Social Services brought five separate petitions against Lahrick's mother and maternal grandmother, alleging that Lahrick and his four siblings were either abused or neglected children pursuant to Family Court Act § 1012 (e) or (f).

At a fact-finding hearing on the petitions, Dr. Moohr, the associate director of pediatrics at the hospital where Lahrick was treated, testified that, based upon his experience as a specialist in the field of burns and his personal examination of the infant 36 to 48 hours following his admission to the hospital, the burns were caused by contact with a hot liquid.

In opposition to that testimony, the mother and the maternal grandmother insisted that Lahrick, who was five months old at the time of the incident, received the burns when he

rolled off the bed where he had been left alone to sleep and was wedged next to a hot radiator pipe for an undetermined period of time.

At the conclusion of the hearing the Family Court dismissed the petitions with the following words: "The Court finds that this is a most difficult situation. Although there are some questions that still are unanswered in the Court's mind concerning some of the issues regarding the injuries of the child, I find that the petitioner did not meet that standard of evidence which would make [out] a finding of child abuse or neglect".

On this appeal, the mother argues that the Family Court correctly dismissed the petitions in view of the adequate explanation of the injuries offered by them. The petitioner, on its part, contends that the Family Court erred in dismissing the petitions in view of the undisputed proof of serious injury to Lahrick and the respondents' failure to offer an adequate explanation for the injury. The petitioner urges that findings of abuse and neglect should be entered and that the case should be remitted to the Family Court for a dispositional hearing.

By contrast, the children's Law Guardian argues that because the record was inadequate to determine whether or not Lahrick and his siblings were abused or neglected, the matter should be remitted to the Family Court for further proceedings. The Law Guardian points out that the testimony presented an unresolved conflict concerning whether Lahrick's burns resulted from contact with hot liquid or a hot metal object and that the Family Court Judge implicitly recognized that fact at the end of the fact-finding hearing. The Law Guardian goes on to argue that additional expert testimony is required to elucidate the source of Lahrick's burns and help evaluate whether they were incurred as a result of abuse or neglect and that on the present state of the record it would be precipitate to enter findings of fact against the respondents. Since the hearing, the Law Guardian has engaged the services of an independent medical witness who is prepared to testify that contrary to Dr. Moohr's testimony, Lahrick's burns were not splatter burns but were consistent with burns sustained as a result of contact with a hot metal object. While thus supporting the respondents' explanation for the possible origin of the burns, this expert has concluded that, contrary to the respondents' testimony, the burns were not likely to have been accidental and that a five-month-old infant does not

possess sufficient mobility to roll the distance alleged by the respondents. However, this material is dehors the record.

Nevertheless, in view of the uncertainty engendered by the record we conclude that a de novo hearing is crucial for an informed determination by the Family Court with respect to whether Lahrick and his siblings have been abused or neglected by the respondents. At that hearing, new material may be presented. Hence, we reverse the order of the Family Court dismissing the petitions and order a new fact-finding hearing as requested by the Law Guardian. Mollen, P. J., Bracken and Niehoff, JJ., concur.

Eiber, J., concurs insofar as the order appealed from is reversed, but dissents and votes to find the respondents guilty of child neglect, and to remit the proceedings to the Family Court, Kings County, for a dispositional hearing, with the following memorandum, in which Thompson, J., concurs: Contrary to the view of the majority I am unable to conclude that a de novo hearing is crucial to a proper disposition of these cases. Upon reviewing the record, it is my belief that there was sufficient proof adduced at the fact-finding hearing to support the conclusion that Lahrick L. was indeed a victim of child neglect.

Pursuant to Family Court Act § 1046 (b), a determination that a child has been abused or neglected must be based upon a preponderance of evidence. " 'Once the petitioner has established the existence of injuries sustained by the child which are substantial in character while the child was in lawful custody of his parents * * * then petitioner is deemed to have established a prima facie case and the burden of coming forward with proof shifts from the petitioner to the respondent who is then *required to offer a satisfactory explanation for these injuries*' " (*Matter of Tashyne L.*, 53 AD2d 629, 630, quoting from *Matter of Young*, 50 Misc 2d 271, 273; emphasis supplied).

The uncontroverted evidence proffered at the hearing by the petitioner, to the effect that Lahrick was admitted to Woodhull Hospital suffering from extensive first and second degree burns on his arm, hand, both of his legs and the soles of his feet, while in the respondents' custody, constituted prima facie proof of child neglect (*see,* Family Ct Act § 1046 [a] [ii]). The existence of these injuries effectively imposed upon the respondents the obligation to come forward with proof to rebut the prima facie showing of neglect by satisfactorily explaining the cause of the injuries (*see, Matter of Tonita R.,* 74 AD2d 830; *Matter of Cynthia V.,* 94 AD2d 773).

In an effort to discharge their burden of providing an adequate explanation for the source of Lahrick's injuries, the respondents hypothesized that the child, who was then five months old, rolled the entire length of a full-sized bed, where he had been left alone to sleep, and came into contact with a hot radiator. More specifically, the mother testified that her mother had taken the infant into the bedroom while she remained in the kitchen baking. The maternal grandmother then returned to the kitchen, leaving the infant alone. Shortly thereafter, the mother entered the bedroom to check on the baby. The child was not on the bed nor otherwise in sight. Moments later, the mother heard a muffled cry emanating from beneath the bed. It was there that she found her son, severely burned and covered with dust. According to the maternal grandmother the infant had been placed sideways across the foot of the bed; two pillows were placed at the edge of the bed to prevent him from rolling off, and a roll of blankets had also been situated at the head of the bed to protect the baby from the heat of the radiator. Despite these alleged precautions, she maintains that the injuries suffered by Lahrick resulted from his having come into contact with the radiator.

I am unable to credit this explanation.

At the hearing, the petitioner, through the testimony of Dr. Moohr, a physician who specializes in the field of pediatrics with a further specialization in the treatment of burn injuries specifically associated with suspected instances of child abuse, directly refuted the respondents' hypothesis. In the opinion of this expert, who had personally examined the child at the hospital shortly after the burns were inflicted, the respondents' explanation as to the cause of the injuries did not comport with the irregular contours of the burns that were found on the infant's body. The respondents' hypothesis was further undermined by the doctor's testimony that the reflex mechanisms in an infant would prevent the child from repeatedly returning to the source of the injury. By way of contrast, the respondents' explanation would require that the child come into repeated contact with the radiator in order to account for the wide dispersion of burns over the various parts of his body. The implausibility of the explanation was further demonstrated by Dr. Moohr's observations regarding the limited locomotive abilities of an infant and his ultimate conclusion that a child of Lahrick's age could not, in all likelihood, roll a distance of six or seven feet in the short span of time that he was allegedly left unattended.

Dr. Moohr additionally testified that a radiator could not have caused the injuries because the burns on Lahrick's body "display[ed] none of the kind of regular geometry that one expects with direct contact with a hot radiator. Most radiator burns will display some kind of geometric regularity * * * and that simply wasn't present in this burn". According to Dr. Moohr, the burns sustained by Lahrick were "very much of the same pattern one sees regularly, in hot liquid burns", inasmuch as "[t]here were clear outlines of what appeared to be splatter marks".

In addition to this medical proof, testimony elicited from a case worker to the effect that on two separate visits to the respondents' home in January 1985, she had found the radiator in question to be cold and inoperable, subjects the proffered explanation of the respondents to an even higher degree of suspicion.

Juxtaposed against the testimony of the petitioner's witnesses as well as photographic evidence which graphically attests to the severity of the infant's injuries, is the additional testimony of the mother in which she claimed, quite incredibly, that the child neither screamed nor cried when he came into contact with the radiator, and the fact that she initially informed the caseworker that she did not know what caused Lahrick's injuries.

In light of the above, the explanation provided by the respondents regarding the injuries sustained by the child was, in my opinion, factually insufficient to rebut the petitioner's prima facie showing of neglect. A neglected child is statutorily defined as "a child * * * whose physical, mental or emotional condition has been impaired * * * as a result of the failure of his parent * * * to exercise a minimum degree of care" (Family Ct Act § 1012 [f] [i]). In order to sustain its case, the petitioner was not required to conclusively prove the precise manner in which the injuries were sustained. In the absence of a viable explanation by the respondents, it was sufficient for the petitioner to establish that Lahrick's physical condition was impaired and his welfare placed in jeopardy by virtue of the failure of his mother to exercise a minimum degree of care. While I, too, would be reluctant to find the respondents guilty of child abuse since there is insufficient evidence in the record that the injuries sustained by Lahrick were intentionally inflicted upon him or that these injuries were inflicted upon him by other than accidental means (see, Family Ct Act § 1012 [e]), there is nevertheless, ample evidence to support a

finding of child neglect *(see, Matter of Christopher S. v Kathleen S.,* 116 AD2d 653).

In sum, on the present record, and particularly in view of the uncontroverted medical evidence presented by the petitioner, the explanation advanced by the respondents should be rejected as wholly inadequate. This case is but another unfortunate example of a situation in which "the injuries speak for themselves" *(Matter of Cynthia V.,* 94 AD2d 773, *supra).* Upon this analysis, a new fact-finding hearing, as envisioned by the majority, is wholly unnecessary.