■ GRACE MUNIZ, Respondent-Appellant, v AMERICAN RED CROSS et al., Defendants, and NEW YORK BLOOD CENTER OF THE AMERICAN RED CROSS et al., Appellants-Respondents.—Order of the Supreme Court, Bronx County (Anita Florio, J.), entered on or about October 23, 1987, which, *inter alia,* denied defendant Travenol Laboratories, Inc.'s motion for summary judgment dismissing the complaint as against it, is unanimously modified, on the law, to grant such motion, and otherwise affirmed insofar as appealed from, without costs.

Order of the Supreme Court, Bronx County (Anita Florio, J.), dated January 11, 1988, which granted defendant New York Blood Center of the American Red Cross's motion for reargument, and, upon reargument, granted such defendant's motion for summary judgment to the extent of dismissing plaintiff's second cause of action for lack of informed consent, and adhered to its denial of such motion insofar as it sought dismissal of plaintiff's first cause of action for negligence, is unanimously affirmed, without costs.

Shortly after visiting defendant Blood Center to donate blood, plaintiff sustained septic phlebitis in her left arm that was diagnosed as secondary to an infection of the anticubital vein at the site of a needle stick. Insofar as pertinent to this appeal, she sued the Blood Center for negligence in the

procedure used to extract her blood, known as a venipuncture in medical terminology, and the manufacturer of the needle used by the Blood Center in performing such procedure, Travenol Laboratories, for breach of warranty pursuant to Uniform Commercial Code § 2-318. (Causes of action against Travenol for negligence and strict products liability were dismissed as time barred in a prior order not appealed. A cause of action against the Blood Center for lack of informed consent was dismissed as lacking in merit in the order on appeal, but no appeal from that aspect of the order is taken by plaintiff as limited by her brief.)

Defendants separately moved for summary judgment, each submitting affidavits from officers that described procedures assertedly in place at the time of plaintiff's venipuncture designed to assure, in the case of Travenol, the fitness of its needles for purposes of venipunctures, and, in the case of the Blood Center, the safety of venipunctures. The thrust of both affidavits was that the probability that plaintiff's infection was caused by either the needle marketed by Travenol or the venipuncture performed by the Blood Center was so remote as to be virtually nonexistent. Thus, the affidavit of the Blood Center stated that it performs more than 400,000 venipunctures a year´ and was not aware of "any episodes of documented spesis *[sic]* during venipuncture for simple blood donation." In a similar vein, Travenol's affidavit represented that it was unaware of ever having "released a blood pack unit that was not sterile and there has been no incident of contamination of blood packs related to unsterile containers."

In opposition, and in support of her own cross motions for summary judgment against each of the defendants, plaintiff relied on hospital records and the reports of the numerous physicians who examined her, which tended to show at least a temporal and locational relationship between her injury and the venipuncture she underwent at the Blood Center. In addition, she submitted the affidavit of a physician who stated that plaintiff's injury "was the result of the departure from appropriate blood banking standards on the part of the [Blood Center]." Elaborating somewhat, he further stated that "[t]his infection was caused by a careless preparation of the arm from which the blood was withdrawn and/or careless removal of that blood with a needle that was not sterile"; in a second affidavit, submitted on motions for reargument, he stated that plaintiff's injury "could not have occurred, if standard procedures involved in the sterilization of instruments or people,

were employed at the time that blood was extracted from her."

The affidavit of plaintiff's physician-expert explicitly implicates only the Blood Center's negligence. Her attorney, however, seeking to justify Travenol's liability as well, would apparently have the fact finder infer that while the most likely cause of plaintiff's injury was the Blood Center's negligence, if, by some small chance, there was no such negligence, then the only other likely cause of the injury was a needle marketed by Travenol that was not sterile. Lacking direct proof of either negligence by the Blood Center or a breach of warranty by Travenol, plaintiff's attorney, invoking res ipsa loquitur, argues that either or both such events can be inferred from the mere fact of plaintiff's injury, and would apparently have each defendant explain to the jury why the other should be held responsible for introducing an unsterile agent. IAS held that res ipsa loquitur was applicable, and denied all motions for summary judgment on the ground that issues of fact existed as to the cause of plaintiff's injury.

Evidence of due care such as defendants submitted in support of their respective motions for summary judgment is seldom sufficient to so completely contradict a reasonably drawn inference of negligence as to make the inference not permissible (Prosser and Keeton, Torts § 40, at 261-262 [5th ed]). Standing against the proof of due care is the fact of an injury which does not ordinarily occur in the absence of negligence, and which perforce raises an issue of fact as to whether, in the particular case, there was a failure to follow accepted procedures or otherwise exercise due care (ibid.; Fogal v Genesee Hosp., 41 AD2d 468, 476). Therefore, the threshold issue, indeed the only issue that was raised on these motions, was whether reasonable persons could infer from the fact of plaintiff's injury, and the circumstances surrounding it, that Travenol marketed a defective needle or that the Blood Center departed from accepted procedures in performing a venipuncture on plaintiff.

We think the affidavit of plaintiff's expert supplies a sufficient foundation to warrant such an inference as against the Blood Center but not as against Travenol. Assuming, as the Blood Center argues, that lay jurors lack the knowledge necessary to draw an inference of negligence from the mere fact that plaintiff sustained an injury following the administration of a needle (see, Pipers v Rosenow, 39 AD2d 240; accord, Leiman v Long Is. Jewish Hillside Med. Center, 60 AD2d 908; Hunter v Szabo, 117 AD2d 778), we see no reason

why such knowledge cannot be supplied, as it was here, by an expert (Prosser and Keeton, *op. cit.,* § 39, at 247), particularly in a medical malpractice action *(id.,* at 257). "[T]he requisite probability of negligence may exist quite independently of the awareness or 'common knowledge' of the lay community. Expert testimony to the effect that those in a specialized field of knowledge or experience consider a certain occurrence as indicative of the probable existence of negligence is at least as probative of the existence of such a probability as the 'common knowledge' of lay persons." *(Buckelew v Grossbard,* 87 NJ 512, 527, 435 A2d 1150, 1158; *see also, Robinson v Intermountain Health Care,* 740 P2d 262, 266 [Utah].) While the Blood Center impugns the affidavit of plaintiff's expert as conclusory, it offers no expert opinion of its own suggesting another explanation for plaintiff's injury more likely than its negligence. Rather, its attorneys, apparently on the basis of common knowledge, suggest only that plaintiff might have exposed her arm to an unsanitary environment after she left the Blood Center. While we see no reason, at this juncture, why the Blood Center should not be able to urge such a possibility to the jury, it is merely that, just a possibility, and does not so completely negate the possibility of negligence as to make its inference unreasonable.

On the other hand, we do not think plaintiff's injury and the circumstances surrounding it warrant an inference that Travenol marketed a needle that was unsterile or otherwise defective. Such an inference would place upon Travenol the burden of explaining what became of the needle after it left its control, an onerous if not impossible burden that would effectively relieve the plaintiff in a breach of warranty case from proving a defect in the product at the time of sale *(Natale v Pepsi-Cola Co.,* 7 AD2d 282; *see also, Becton v Firestone Tire Co.,* 38 AD2d 693). It is one thing for plaintiff to urge that her injury was probably caused by an unsterile needle; it is quite a different, much more conjectural, hypothesis to say that the needle was probably already unsterile before it left Travenol's hands. It is perhaps for this reason that it is sometimes said that res ipsa loquitur is a form of proof that has no applicability to a breach of warranty claim *(Hershenson v Lake Champlain Motors,* 139 Vt 219, 424 A2d 1075, 1078; *but see, Anderson v Somberg,* 67 NJ 291, 338 A2d 1, *cert denied* 423 US 929). Concur—Ross, J. P., Carro, Rosenberger, Wallach and Smith, JJ.