■ In the Matter of CHRISTOPHER ANTHONY M., a Child Alleged to be Neglected. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; FLOR M.M., Respondent; ERICK G., Appellant. (Proceeding No. 1.) In the Matter of ERICK M., a Child Alleged to be Abused and Neglected. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; FLOR M.M., Respondent; ERICK G., Appellant. (Proceeding No. 2.) [848 NYS2d 711]—

In two child protective proceedings pursuant to Family Court Act article 10, the father appeals from so much of an order of disposition of the Family Court, Queens County (Richroath, J.), dated June 12, 2006, entered upon his default, as, upon a fact-finding order of the same court dated April 12, 2006, entered upon his default, finding, inter alia, that he had abused the child Erick M. and had derivatively neglected the child Christopher M., and upon an order of the same court dated November 10, 2005, denying his motion for summary judgment dismissing the petitions insofar as asserted against him, released the children to the mother's custody.

Ordered that the appeal from the order of disposition is dismissed, without costs or disbursements, except insofar as it brings up for review the order dated November 10, 2005, denying the motion for summary judgment dismissing the petitions insofar as asserted against the father; and it is further,

Ordered that the order of disposition is reversed insofar as reviewed, on the law, without costs or disbursements, the father's motion for summary judgment dismissing the petitions insofar as asserted against him is granted, the petitions are dismissed insofar as asserted against the father, the order dated November 10, 2005 is modified accordingly, and so much of the fact-finding order dated April 12, 2006 and the order of disposition dated June 12, 2006, as pertain to the father are vacated.

Where, as here, the order of disposition appealed from was made upon the appellant's default, review is limited to matters which were the subject of contest in the Family Court (see Matter of Paulino v Camacho, 36 AD3d 821, 822 [2007]; Matter of Vanessa F., 9 AD3d 464 [2004]). Accordingly, review is limited to the denial of the father's motion for summary judgment dismissing the abuse and neglect petitions insofar as asserted against him.

In support of his motion for summary judgment, the father submitted the evidence adduced at the hearing held pursuant to Family Court Act § 1028 (hereinafter the 1028 hearing). The Family Court was correct to the extent that it held that the conclusions of the 1028 hearing court concerning the issue of imminent risk to the children were not dispositive of the ultimate determination on the abuse and neglect petitions (see Matter of Jacob P., 37 AD3d 836, 838 [2007]; Matter of Toni G., 8 AD3d 379, 380-381 [2004]; Matter of Bobby M., 103 AD2d 777, 779 [1984]). However, contrary to the motion court's ruling, the father properly tendered the sworn testimony of the witnesses at the 1028 hearing in support of his motion, and the findings of fact by the hearing court.

Essentially, the father's credible testimony established that he and the child entered their apartment, passed through the kitchen where Maide M., a woman who, together with her family, shared the apartment with the child and his parents, was cleaning, and then entered the bedroom adjoining the kitchen. A minute or two later, as the father was making the bed, he observed the child crawl out of the bedroom and into the kitchen. The father believed that the child was on his way into the living room to watch television with two other children in the apartment, as was the child's custom. Two to three minutes later, the father heard the child scream, at which time the father immediately ran into the kitchen and observed Maide M. putting water on the child's face. The father tried to calm the child, and immediately took the child to the mother who was down the block at a laundromat. The parents then immediately brought the child to the local hospital. A physician who examined the child caused the child welfare agency to be called and an investigation ensued.

The physician testified that the child had a burn on his face, which appeared to be consistent with a "hot liquid . . . falling from above and landing on his head" or "being poured" from over the child's head and "running down" his face. The father brought a bottle of cleaning fluid that he thought might have caused the burn. Contrary to his belief, the bottle did not

contain a caustic liquid and was ruled out as a cause of the burn. The investigators also determined that Maide M. kept a thermos of boiling water on the table or counter in the kitchen which she reported was used for making formula. Based upon the admissible evidence at the 1028 hearing, the hearing court (Richardson, J.), in an order dated March 17, 2005, made the following findings of fact: "It is clear from the credible evidence adduced at th[e] hearing, that neither Flor M[.] nor Eric G[.] harmed the child Erick. The mother was at the laundromat when the child Erick was injured, and the father Eric G[.], while present in the home, was not present in the room at the time the child was burned. [The father's] testimony was credible that Ms. M[.] was the only one in the room when the child was injured . . . Ms M[.] reported to the child welfare authorities and police authorities that she was the one who first saw the child after he was injured, and that [ ] she and the child were alone in the room when the child was injured."

Family Court Act § 1046 (a) (ii) permits an inference to be drawn so as to establish a prima facie case of abuse or neglect against the parents or other caretakers of a child when the child suffers an injury which would not ordinarily occur in the absence of an act or omission of the caretakers (*see Matter of Philip M.*, 82 NY2d 238, 243 [1993]; *Matter of Ashley RR.*, 30 AD3d 699, 700 [2006]). Clearly, the testimony of the physician as to the mechanism of the burn was sufficient to permit the statutory inference. It was then incumbent on the parents to rebut the petitioner's prima facie case (*see Matter of Philip M.*, 82 NY2d at 244; *Matter of Anthony R. C.*, 173 AD2d 623, 624 [1991]). However, the agency retains the burden of proving abuse and neglect by a preponderance of the evidence (*see Matter of Philip M.*, 82 NY2d at 244; *see also* Family Ct Act § 1046 [b] [i]).

Article 10 of the Family Court Act is a "fault based" statute (*Matter of Philip M.*, 82 NY2d at 243). The findings of fact and the credible evidence adduced at the hearing, including the father's credible testimony as corroborated by the other evidence discovered by the investigators, all of which was submitted in support of the motion for summary judgment, was sufficient to rebut the statutory inference of fault against the father and to establish that the injury "could reasonably have occurred accidentally" (*Matter of Philip M.*, 82 NY2d at 244; *see Matter of Eric G.*, 99 AD2d 835 [1984]; *see also Matter of Vincent M.*, 193 AD2d 398, 403 [1993]). Moreover, the evidence provided a sufficient factual basis for the father's inability to explain how the child was injured. He did not know how the child was

injured because he was making the bed in the bedroom and was not in the presence of the child at the moment the child was injured in the kitchen.

Since the evidence submitted by the father in support of his motion for summary judgment was sufficient to rebut the statutory inference and to establish, prima facie, that his conduct was neither negligent nor abusive (*see* Family Ct Act § 1046 [a] [i], [ii]), the burden shifted back to the petitioner to demonstrate the existence of a triable issue of fact (*see Matter of Suffolk County Dept. of Social Servs. v James M.*, 83 NY2d 178, 182 [1994]; *see generally* CPLR 3212 [b]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

In opposition, the petitioner failed to set forth any evidentiary proof to establish the existence of a triable issue of fact (*see generally Zuckerman v City of New York*, 49 NY2d 557 [1980]). Rather, the petitioner merely submitted an affirmation of counsel who argued that the statutory inference applied. Under these circumstances, were we to permit the petitioner to rely solely on the statutory inference to defeat the motion for summary judgment, as the dissent would have us do, we would be elevating the statutory inference to an irrebuttable presumption in the face of a motion for summary judgment.

In light of the foregoing, the father's argument that Family Court Act § 1046 (a) (ii) is unconstitutional as applied to him has been rendered academic. Miller, J.P., Skelos and McCarthy, JJ., concur.

Covello, J. (concurring in part and dissenting in part and voting to dismiss the appeal from the order of disposition except insofar as it brings up for review the order dated November 10, 2005, and to affirm the order of disposition insofar as reviewed): In the instant matter, a young child was hospitalized for a week after suffering burns while in his father's care. These circumstances, by themselves, would permit a fact-finding court to infer that the father abused or neglected the child (*see* Family Ct Act § 1046 [a] [ii]; *Matter of Philip M.*, 82 NY2d 238, 244-247 [1993]). Nevertheless, despite the availability of this inference, and despite the father's failure to provide an explanation as to how the child was burned, the majority has determined that an issue of fact does not exist as to whether the father abused or neglected the child. I must disagree.

The petitioner Administration for Children's Services (hereinafter the ACS), alleging, among other things, that 18-month-old Erick M. had been abused and/or neglected (*see* Family Ct Act § 1012 [e], [f]), commenced these child protective proceedings against Erick M.'s father, as well as Maide M., who lived with

Erick M.'s family, and who would babysit Erick M. when his parents were not home. Three days earlier, Erick M., whose face had been burned, had been taken to a hospital, where a physician determined that he had first and second degree burns that were consistent with a hot liquid or liquid chemical being "poured" on top of his head. After a report of suspected abuse was made, an ACS caseworker interviewed the father and Maide M., who were home with Erick M. at the time he suffered his injuries. The father, who did not know how Erick M. might have been burned, told the caseworker, as well as other people to whom he spoke about the incident, that when he was in a bedroom, and Maide M. was in the kitchen, he heard Erick M. crying in the kitchen. Maide M., who also did not know how Erick M. might have been burned, told the caseworker, as well as other people to whom she spoke about the incident, that when she was in the kitchen washing dishes, she suddenly heard Erick M. crying from behind her.

In support of the petitions, the ACS alleged that the father and Maide M. were both "persons legally responsible" for Erick M. (*see* Family Ct Act § 1012 [g]), and that they had failed to adequately explain how Erick M. was burned. Thus, it was clear that the ACS, which had no direct evidence showing how Erick M. was burned, was relying on Family Court Act § 1046 (a) (ii). That statute provides that in a child protective proceeding, "proof of injuries sustained by a child . . . of such a nature as would ordinarily not be sustained . . . except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible" for the child.

After the proceedings were commenced, Erick M.'s parents made an application pursuant to Family Court Act § 1028 to have Erick M. returned to their custody. A hearing (hereinafter the 1028 hearing) was then held to determine that application.

Maide M. declined to testify at the 1028 hearing. However, the father did testify. According to him, shortly before Erick M. was burned, he and Erick M. were in a bedroom, and Maide M. was cleaning the kitchen. While the father was making the bed, Erick M., who was "in [his] care," left the room. Approximately two minutes later, he heard Erick M. screaming in the kitchen. He went to the kitchen, saw that Erick M. was injured, and asked Maide M. what had happened. However, she replied that she did not know.

Thus, the father, who took Erick M. to his mother at a laundromat before taking him to the hospital, had no idea how

Erick M. got burned. On the day of the incident, though, he did suggest that Erick M. might have accidentally had a liquid cleaning agent spilled on him, but it was determined that the liquid that the father referred to was not caustic.

At the conclusion of the 1028 hearing, the court (Richardson, J.), which found that the ACS failed to establish that Erick M. would be at imminent risk of harm if he was returned to his parents' care, granted his parents' application (see Family Ct Act § 1028 [a]). In support of its determination, the court found that the evidence showed that when Erick M. was injured, Maide M. was the only one present in the room with him. In addition, the court, which drew a negative inference against Maide M. based on her failure to testify, found the father to be "fully credible, in that he didn't know what happened to" Erick M. The court also found that it was "clear" that the father had not "harmed" Erick M.

Three weeks later, the father moved for summary judgment dismissing the petitions. In support of his motion, he contended that the evidence presented at the 1028 hearing, as well as the court's decision, "conclusively establish [ed] that [he] was not involved [in] any way, shape or form with [Erick M.'s] injuries."

However, in the resultant order, the court (Richroath, J.) denied the father's motion. First, the court found that the father's reliance on the determination after the 1028 hearing was misplaced, as the issue that was litigated at that hearing was completely distinct from the issues that the petitions raised, that is, whether he abused or neglected Erick M. The court then determined that issues of fact existed as to whether Erick M. was abused or neglected.

The majority has concluded that the Family Court should have granted the father's motion for summary judgment. However, for the reasons that follow, I believe that the court correctly denied that motion.

Family Court Act article 10, which is designed to protect children from injury or mistreatment, and help safeguard their physical, mental, and emotional well-being (see Family Ct Act § 1011), does not expressly provide for a summary judgment procedure. Nevertheless, a party in a child protective proceeding may still move for summary judgment (see Matter of Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178, 182 [1994]). Summary judgment, which "remains a drastic procedural device" (Matter of Suzanne RR., 35 AD3d 1012 [2006] [internal quotation marks omitted]; Matter of Hannah UU., 300 AD2d 942, 943 [2002]), would, of course, only be granted if it has clearly been ascertained that there is no triable issue of fact

outstanding; issue finding, rather than issue determination, is the court's function on the motion (*see Matter of Suffolk County Dept. of Social Servs. v James M.,* 83 NY2d at 182).

As was noted above, Family Court Act § 1046 (a) (ii) applies to the instant matter. The Court of Appeals, which has observed that "the statute is modeled on the res ipsa loquitur doctrine," has held that the statute "authorizes a method of proof which is closely analogous to the [doctrine's] negligence rule" (*Matter of Philip P.,* 82 NY2d at 244; *see Matter of Fantaysia L.,* 36 AD3d 813, 814 [2007]). As the Court has explained, just "[a]s in negligence cases tried on the theory of res ipsa loquitur," once the petitioner has established a prima facie case under the statute, the "burden of explanation" shifts to the respondents, who may attempt to rebut the "evidence of culpability" for the child's injuries (*Matter of Philip P.,* 82 NY2d at 244), which are of a type that ordinarily do not occur if a child's caretaker has been "protective and nonabusive" (*Matter of Tashyne L.,* 53 AD2d 629, 630 [1976]). On that note, although the statute is often described as providing for a "presumption" of culpability, it does not create a true presumption, but rather, creates a permissible inference of culpability that a fact-finding court may draw (*see Matter of Ashley RR.,* 30 AD3d 699, 700 [2006], citing *Kambat v St. Francis Hosp.,* 89 NY2d 489, 495 [1997]).

In res ipsa cases, there necessarily has been "an injury which does not ordinarily occur in the absence of negligence, and which perforce raises an issue of fact" as to whether the party against whom the doctrine applies "fail[ed] to follow accepted procedure or otherwise exercise due care" (*Muniz v American Red Cross,* 141 AD2d 386, 388-389 [1988]). It would be a "rare case" that the party would be entitled to judgment as a matter of law (*Weeden v Armor El. Co.,* 97 AD2d 197, 204 [1983]). This is because the party would have to come forward with rebuttal evidence that is "so overwhelmingly conclusive, it effectively overcomes any reasonable inference of [his] negligence" (*Weeden v Armor El. Co.,* 97 AD2d at 204-205; *see Muniz v American Red Cross,* 141 AD2d at 388-389; *Fogal v Genesee Hosp.,* 41 AD2d 468, 476 [1973]; *see also* Prosser & Keeton, Torts § 40, at 261-262 [5th ed]).

Applying these principles to the instant matter (*cf. Matter of Philip P.,* 82 NY2d at 244), I would find, unlike the majority, that the father failed to meet his burden of tendering sufficient evidence demonstrating the absence of any triable issue of fact (*see Alvarez v Prospect Hosp.,* 68 NY2d 320, 324 [1986]). This is because I believe that the testimony at the 1028 hearing, which the father relied on, was not so "overwhelmingly conclusive"

that it would be unreasonable for a fact-finding court to infer that he was responsible for Erick M.'s injuries. The testimony showed that the father was caring for Erick M. at the time he was injured, and that neither the father, nor anybody else for that matter, was able to provide an explanation as to how Erick M. was injured. As was noted above, these circumstances would justify, but not warrant, a fact-finding court in making a finding of abuse or neglect against the father (*see Matter of Philip P.,* 82 NY2d at 244-247; *cf. Matter of T'Yanna M.,* 27 AD3d 472, 473 [2006]; *Matter of Commissioner of Social Servs. of City of N.Y. v Hyacinth L.,* 210 AD2d 329, 330-331; *Matter of Lahrick L.,* 118 AD2d 709, 710-711 [1986]).

On a final note, I would point out that by determining that the father met his burden on his motion for summary judgment and that the burden shifted to the ACS to raise a triable issue of fact, the majority has effectively required the ACS to come forward with direct evidence of the father's culpability. This, however, undermines the purpose of Family Court Act § 1046 (a) (ii), which is clearly to relieve petitioning agencies of such a burden (*see Matter of Roman,* 94 Misc 2d 796, 799-800 [1978]). Indeed, as courts have recognized for decades, obtaining direct evidence of abuse or neglect is quite a difficult task, because the acts of abuse or neglect often occur in the privacy of the home, without witnesses, against infants who are unable to testify on their own behalf (*see Matter of Young,* 50 Misc 2d 271, 272 [1966]; *Matter of S,* 46 Misc 2d 161, 161-162 [1965]).

For all of the foregoing reasons, I believe that the father's motion for summary judgment was correctly denied. Since I also believe that the father's remaining contention is without merit, I would affirm the order of disposition insofar as reviewed.