■ In the Matter of AMIR L., a Child Alleged to be Neglected. CHANTEL B. et al., Appellants; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent. [961 NYS2d 386]—

Order, Family Court, New York County (Susan K. Knipps, J.), entered on or about March 5, 2012, which found that respondents had neglected their son, unanimously reversed, on the law and the facts, without costs, the findings of neglect vacated, and the petition dismissed.

The Family Court dismissed the abuse charges against respondents on the ground that petitioner did not prove by a preponderance of the credible evidence that they had intentionally caused their five-month-old son's fractured femur. The court found that the opinion of petitioner's medical expert, Dr. Cooper, that the child's injury was intentionally inflicted was undercut by a 2000 article in the Journal of Pediatric Orthopaedics, "Femur Shaft Fractures in Toddlers," which "documents two cases of six-month-old infants who reportedly fractured their femurs by falling from a bed and a sofa, respectively. The article further specifically calculated a 62% probability that

abuse was *not* a factor in the fractures suffered by the infants they studied." Thus, the court credited the opinion of respondents' expert, Dr. David, that the child's "injuries could have occurred by means other than intentional infliction," and found that "the evidence of the parents' care for the child prior to the injury and their actions after the injury weighs against a finding of abuse." The court acknowledged that inconsistent statements by respondents had been reported in the hospital records, and that respondents' "account of [the child's] symptoms was inconsistent with the expert testimony concerning the likely reactions the child would show after suffering a fracture," but found that those considerations did not "tip the scales in favor of a finding of abuse."

Although it dismissed the abuse charges, the Family Court made findings of neglect based on respondents' "failure to provide a credible explanation for their infant son's fractured femur." The court noted that even if the fracture resulted from the child's accidental fall from a couch onto a tile floor on June 28, 2011, it would find medical neglect in light of the expert testimony that the child would have evinced symptoms whether he suffered "either a complete break or a progressing hairline fracture," yet respondents waited more than a week before seeking medical treatment. We now consider whether these findings of neglect are supported by a preponderance of the credible evidence.

The Family Court correctly determined that petitioner established a prima facie case of neglect because a fractured femur is an injury that a five-month-old child would not ordinarily sustain except by reason of the acts or omissions of the parent or other person responsible for the child (*see* Family Ct Act § 1046 [a] [ii]; *Matter of Philip M.*, 82 NY2d 238, 244-245 [1993]; *Matter of Sara B.*, 41 AD3d 170 [1st Dept 2007]). This shifted the burden of going forward to respondents to rebut the presumption of culpability with a credible and reasonable explanation of how the child sustained the injuries (*see Matter of Philip M.*, 82 NY2d at 244).

Respondents satisfied their burden of explanation by showing that the injury could have occurred accidentally when, on June 28, 2011, the father went to dispose of a soiled diaper and the child, for the first time in his life, rolled over and fell off respondents' couch, which, according to Drs. David and McClellan, most likely caused him to incur a hairline fracture of his right femur that later progressed to an oblique fracture (*see Matter of Jose Luis T. [Carmen A.]*, 81 AD3d 406 [1st Dept 2011]; *Matter of Christopher Anthony M.*, 46 AD3d 896 [2d Dept 2007]; *Matter of Anthony R.C.*, 173 AD2d 623 [2d Dept 1991]).

Nor does the record support a finding of medical neglect. In order to find a parent guilty of medical neglect, the court must find, by a preponderance of the evidence, that the parent's failure to seek or accept medical care placed the child in imminent danger of becoming impaired (Family Ct Act § 1012 [f] [i] [A]; *Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *see Matter of Shawndel M.*, 33 AD3d 1006 [2d Dept 2006]). In determining whether a parent exercised a minimum degree of care, the court must evaluate the parent's behavior "objectively," i.e., in light of whether "a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances then and there existing" (*Nicholson v Scoppetta*, 3 NY3d at 370).

Here, the finding of medical neglect was based on Dr. Cooper's testimony that even a hairline fracture would cause the child evident pain, which led the Family Court to conclude that respondents testified untruthfully when they said that from the time of the child's fall on June 28th until the late evening of July 5th, the child never exhibited any signs of an injury to his right leg. However, respondents also introduced into evidence a videotape that showed the child rolling over and moving his right leg with no evident discomfort, which was received, without objection, as a "fair and accurate representation of what was filmed that morning of July 5."

Further, Dr. Cooper testified that because the leg of a five-month-old infant is often rather chubby, swelling might not be immediately apparent. Dr. David opined that a hairline fracture would have caused little or no pain or noticeable swelling or bruising until it progressed into a full fracture, and that it would have been reasonable for respondents not to have discovered the child's injury until it became a full fracture sometime in the evening on July 5. When the child repeatedly woke up in distress during that night, respondent mother called the pediatrician and was told, on July 6th, to bring him to the emergency room, which respondents did.

We also note that at the time the child entered the hospital his pain on a scale of one to ten was only a two or three. The child had a negative bone survey and negative retinal scan and no abnormalities or injuries other than the fractured femur. Moreover, the child's pediatrician reported that the child was up to date with all of his immunizations and had been provided with appropriate and timely medical care.

In light of respondents' rebuttal evidence and the lack of evidence of other neglect, the finding of neglect was not supported by a preponderance of the evidence (Family Ct Act § 1046 [b] [i]). Just as the court found with respect to the abuse charges,

the inconsistent statements in the medical records attributed to respondents do not tip the scales in petitioner's favor with respect to the neglect charges. Concur—Andrias, J.P., Renwick, Freedman and Gische, JJ.