■ In the Matter of JASMINE S. and Others, Children Alleged to be Neglected. MIRAYAH S. et al., Respondents; COMMISSIONER OF THE ADMINISTRATION FOR CHILDREN'S SERVICES OF THE CITY OF NEW YORK, Appellant. [768 NYS2d 194]—

Orders, Family Court, New York County (Helen Sturm, J.), entered on or about October 22, 2002, in this Family Court Act article 10 proceeding, which dismissed, without prejudice, the neglect petitions initiated against respondent mother, Mirayah S., respondent mother's boyfriend, Ross D., and respondent father, Brian J., Sr., unanimously reversed, on the law, without costs, the petitions reinstated, and the matter remanded to the Family Court, New York County, for further proceedings before a different judge in accordance herewith.

On May 17, 2001, the Commissioner of the Administration for Children's Services (the Commissioner or ACS) filed neglect petitions on behalf of three children against Mirayah S., her live-in boyfriend Ross D., and the children's father, Brian J., Sr., alleging that Ross D. habitually beat the children with a belt, and that Mirayah S. knew of the beatings but did nothing to stop them. The petition also alleged that Jasmine S. frequently missed school, and that she was left to care for her two younger siblings while their mother and her boyfriend were either sleeping or unavailable. In addition, ACS alleged that Brian J., Sr. had a history of domestic violence and cocaine abuse, and that on one occasion he failed to supervise three-year-old Breanna, as a result of which she almost severed her index finger with a meat cleaver.

At the Family Court Act § 1028 hearing on May 23, 2001, Jacqueline Anderson, an ACS caseworker, testified that after receiving a report of suspected neglect, she went to Mirayah S.'s home on May 16, 2001. After speaking with Mirayah S., Ross D. and the children, Anderson concluded that the children were at risk, and she had them removed.

After the neglect petitions were filed, and while the case was pending, the children were placed in their mother's custody, under various conditions, including supervised visits for Brian J., Sr. at ACS offices, an ACS referral for babysitting/day care services, and the exclusion of Ross D. from the home. The case was adjourned to September 24, 2001 for a fact-finding hearing. The court ordered that all discovery be provided two weeks prior to that date.

When the case was called on September 24, 2001, counsel for ACS requested an adjournment. She asserted that she had not been able to provide discovery because ACS's offices were closed due to the World Trade Center attacks. In addition, respondents Ross D. and Brian J., Sr. were both incarcerated. The court adjourned the case to January 7, 2002.

On that date, the fact-finding hearing commenced and Ms. Anderson reiterated much of her testimony from the section 1028 hearing. She also testified about the history of domestic violence between Brian J., Sr. and Mirayah S. When the Commissioner sought to introduce certain ACS documents, counsel for Ross D. requested an adjournment, asserting that he had only received that material three days earlier. Expressing frustration that discovery had not been exchanged, the court adjourned the case to May 14, 2002.

At ACS's request prior to May 14, an adjournment was granted to July 11, on consent of all the parties. Thereafter, in May 2002, Ross D.'s attorney died. Presuming that Ross D. would not be assigned new counsel at the next court appearance, counsel for ACS did not direct its witnesses to appear on that date. When the case was called on July 11, the court assigned Ross D. new counsel. The court admonished ACS for failing to have its witnesses ready, but adjourned the case to October 22, 2002.

On that date, Ross D.'s counsel requested an adjournment because his client was incarcerated. The court determined to bifurcate the hearing and proceed without Ross D. However, the ACS attorney was also ill, and the attorney covering the case for her joined in Ross D.'s counsel's request. The court denied the application, stating: "Let me be real clear. This case has been adjourned—I'm on the record—numerous times. This was put over from last January, January 7. I am not granting an adjournment. We are going to go forward today. [Ross D.] has not been produced today. There certainly is good cause for [his] not being here, but there are two other Respondents here. This court has no time now before next January. This was set for fact finding on July 11. We're going forward today. Step back." The ACS at-

torney told the court that she was not sufficiently familiar with the case to proceed, that the only information she had was that the caseworker was in the middle of direct examination. The court ordered a 30-minute recess so that the ACS attorney could prepare. After the recess, the ACS attorney told the court that she had reviewed the file and spoken with the law guardian, but she renewed her request for an adjournment claiming that: "[i]t would be malpractice for me to proceed and completely unethical for me to put witnesses on the stand and try to present evidence on a case I know nothing about." The court declined to adjourn the case and dismissed all of the petitions for failure to prosecute. This Court granted a stay pending appeal. We now reverse and vacate the order dismissing the neglect petitions.

The purpose of Family Court article 10 child protective proceedings is "to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" (Family Ct Act § 1011). In furtherance of that purpose, the statute requires that after ACS files a neglect petition, a court must conduct a fact-finding hearing (Family Ct Act § 1051). The failure to complete such hearing is grounds for reversal (*Matter of Emanual David R.*, 119 AD2d 677 [1986]; *Matter of Rhonda T.*, 99 AD2d 758 [1984]; *Matter of Patrick D.*, 93 AD2d 836 [1983]; *Matter of Melissa B.*, 225 AD2d 452 [1996]).

While dismissal prior to completion of the fact-finding hearing may be warranted upon a showing that the agency has failed to diligently prosecute the case (CPLR 3216; Family Ct Act § 165), a prerequisite to dismissal under those statutory sections is a written demand for prosecution, which was not made here (*see Melissa B., supra* at 453; *Matter of Maria L.*, 152 AD2d 466, 467 [1989]). Moreover, although the attorney for ACS requested a number of adjournments, the totality of this record does not reveal any willful failure to prosecute (*see Matter of L. Children*, 183 AD2d 624 [1992]). As this Court has emphasized: "[D]ismissal is a harsh remedy which ought not to be imposed without the utmost caution. This is particularly true in abuse and neglect proceedings where the consequences of improvident dismissal may be deleterious to the welfare of the children in whose behalf the proceedings are brought" (*Matter of Shevon C.*, 163 AD2d 14, 15 [1990]).

The testimony elicited from the ACS caseworker supported the petitioner's contentions that the children were subject to excessive corporal punishment and were inadequately supervised. The court also received evidence that the father may have had a propensity for violence and that due to his inadequate

260

supervision a meat cleaver was left in the reach of his three-year-old child, who severely lacerated her index finger with it, requiring stitches. The order of protection directing Ross D. to stay away from the residence expired on the date the court dismissed the petition. Although Ross D. was incarcerated on October 22, 2002, the record does not indicate the duration of his sentence or provide assurance that he does not pose an imminent threat to the children.

Given that the court had earlier determined to bifurcate the case against respondent Ross D., dismissing all of the petitions at this stage of the proceedings is not only illogical but it also frustrates prompt resolution of these serious allegations of neglect (see Matter of Maria L., supra at 467). Concur—Nardelli, J.P., Mazzarelli, Andrias, Marlow and Gonzalez, JJ.