OPINION OF THE COURT
Jacqueline B. Deane, J.
Introduction
On March 21, 2016, the respondent mother, Ms. L., filed a motion for summary judgment and to dismiss the neglect peti *742 tions against her, pursuant to CPLR 3212 and Family Court Act § 1051 (c), on the grounds that respondent’s actions did not fall below a minimum standard of care and, additionally, that the aid of the court was not required. Respondent’s motion contained numerous exhibits, including an affidavit from the respondent mother. Counsel for the petitioner Administration for Children’s Services (ACS) filed opposition papers consisting only of counsel’s affirmation and two exhibits: the neglect petition and a copy of the court order releasing the subject children to the respondent on October 6, 2015. The Attorney for the Children filed a brief affirmation opposing the motion based purely on her interpretation of the relevant case law but, at oral argument on March 31, stated that she agreed with respondent’s counsel that the aid of the court was not required in this case.
Procedural History
On October 6, 2015, the petitioner ACS filed petitions against Ms. L., alleging that she neglected the subject child Kailynn and derivatively neglected the child Zyaya by failing to seek immediate medical care for Kailynn after she fell off a bed. ACS further alleged that Kailynn’s pediatrician stated that the child was losing weight and that the respondent failed to keep scheduled appointments to monitor Kailynn’s weight. ACS also stated in the petition that ACS had previously, in 2012, filed a neglect petition against Ms. L.[1] ACS consented to the children remaining in their mother’s care under ACS supervision and ACS has not sought removal in the almost seven months this case has been pending.
ACS referred the respondent to preventive services, which began in early November in her home and ACS also sought a referral for parenting skills classes. Ms. L. has cooperated with the individual counseling with the preventive service provider throughout the pendency of this case and also expressed her willingness to attend parenting skills classes as soon as she received a referral. On November 15, 2015, during a conference with the Court Attorney, ACS was instructed to refer the respondent for parenting classes within one week. As of the *743 January 8, 2016 court conference date, ACS had still not provided a date when parenting classes would begin and the court ordered that information be provided by the next adjourn date.
Ms. L. began attending a class at the Family Resource Center on February 4, 2016 and has been attending regularly, “always on time and participates in class faithfully.” (See respondent’s motion to dismiss, exhibit G.) On March 31, the return date of this motion, ACS offered the respondent a six-month adjournment in contemplation of dismissal backdated to the January 9, 2016 court date, which respondent declined, requesting a ruling on the instant motion. After oral argument, the court reserved decision.
Decision
The Record before the Court
The record before the court includes ACS progress notes, certified and delegated Brookdale Hospital records for Kailynn, a sworn affidavit by Kailynn’s pediatrician, a report from the associate director of the organization where the respondent attends parenting classes, a report from ACS, a report from a social worker at the preventive agency working with the family, and the 20-day ACS conference summary. (Respondent’s motion to dismiss, exhibits A-K.)
The ACS progress notes from October 2, 2015 describe a conversation between an ACS caseworker and the hospital employee who was the source of the oral report transmittal in which the source states that while Kailynn suffered a left frontal hematoma, she was medically fine and the only follow-up necessary was for Ms. L. to bring Kailynn to see her pediatrician. The hospital source stated that the child was prescribed no medication and the pediatrician stated that the case was only called into the Statewide Central Register of Child Abuse and Maltreatment because Ms. L. did not seek immediate medical attention for Kailynn. The source further stated that “Ms. L. appeared very nurturing towards Kailynn and was genuinely concern [sic] about Kailynn’s wellbeing.” (Respondent’s motion, exhibit B.)
The Brookdale Hospital records state that Ms. L. explained to the medical providers when she brought Kailynn to the ER that the child fell off a bed and hit her head, cried immediately, but that she behaved normally during the two days afterwards despite swelling on her forehead. Ms. L. sought medical atten *744 tion a few days later because the swelling persisted. (See respondent’s motion, Brookdale Hospital records, attached as exhibit E.) The assessment in the hospital records state that the injury was “consistent with mechanism” and the concern was “based on delay in seeking medical attention.” (Id.) The doctor wrote, “I feel as if it is safe to discharge home to care of mother” and discharged the child to her mother with instructions on how to care for a hematoma. (Id.) Kailynn’s pediatrician stated that she saw Kailynn for a follow-up appointment on October 6 and “[a]t that time, the swelling on Kailynn’s forehead was going down and there were no other signs of injury.” (See respondent’s motion, exhibit D, aff of pediatrician.) The pediatrician further stated that “[n]o follow up care was required for the bruise from her fall and Kailynn does not need to be referred to any other specialists at this time.” (Id.) She added, “I have known Ms. L. for many years and I do not have any medical concerns regarding the level of care she provides to her children.” (Id.)
While the progress notes contain a hearsay statement allegedly made by Kailynn’s primary care provider that the respondent had missed medical appointments for Kailynn and that she was losing weight, the doctor’s own sworn affidavit clearly states that “Ms. L. has been good about keeping medical appointments for Kailynn and Zyaya,” that the doctor does “not have any concerns about Ms. L. missing medical appointments,” and that “[a]t Kailynn’s most recent check-up I found that she is healthy and has gained weight . . . .” (See respondent’s motion, exhibit D, aff of the pediatrician.)
A written ACS report to the court dated December 23, 2015 stated that “Ms. L. has been compliant and has been following up with children, Kailynn and Zyaya’s medical appointment [sic]. Both children’s needs are being met at this time.” (See respondent’s motion, exhibit H.)
A letter from the associate director of ICL/Family Resource Center, a social worker, states that Ms. L. has been attending the special needs parenting classes at her organization, that she will receive her certificate of completion on April 28, 2016, and that “she is always on time and participates in class faithfully.” (See respondent’s motion to dismiss, exhibit G.)
Summary Judgment
In her motion, the respondent requests that the court grant her summary judgment on the neglect petitions on the ground that there is no basis for the court to find that respondent’s ac *745 tions fell below a minimum standard of care as would be required in order to make a finding of neglect. While the case law is limited, it is clear that summary judgment is a permissible procedural device in Family Court Act article 10 cases. (See Matter of Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178, 182 [1994] [“(W)e see no reason why summary judgment is not an appropriate procedure in proceedings under Family Court Act article 10”]; see also Matter of Christopher Anthony M., 46 AD3d 896, 897 [2d Dept 2007] [reversing trial court’s denial of respondent’s motion for summary judgment and dismissing the abuse petitions against him]; Matter of Julianne XX., 13 AD3d 1031, 1031 [3d Dept 2004] [“(Although infrequently invoked, summary judgment is a permissible procedural device in the context of Family Ct Act article 10 neglect proceedings”]; Matter of Hannah UU., 300 AD2d 942, 943 [3d Dept 2002] [“It is by now settled that despite the lack of an express provision in the Family Ct Act authorizing the use of summary judgment in an article 10 proceeding, the use of such procedural device is well established”]; Matter of Sara L., 249 AD2d 23, 23 [1st Dept 1998] [“In view of the paucity of the allegations of neglect and abuse, contradicted by both the testimonial and documentary evidence, summary judgment should have been granted and the petitions dismissed”].)
Family Court Act § 165 (a) states that the provisions of the CPLR apply any time there is no procedure specified in article 10 as long as “[the CPLR procedures] are appropriate to the proceedings involved.” “[W]here the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed, the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved.” (Family Ct Act § 165 [a].) While it may be the rare article 10 case where there are no genuine issues of fact to be resolved at trial, absent the more common circumstance where the respondent has been convicted for the criminal offense identical to the acts underlying the abuse or neglect petition, there is no reason that summary judgment should not be considered if the facts are not in dispute.
In petitioner’s response to the summary judgment portion of respondent’s motion, ACS argues that, even if there is no factual dispute as to whether Kailynn sustained her injury by falling off the bed as the respondent describes, the respondent’s act of leaving the child alone on the bed while she went to the bathroom is a sufficient basis for a finding of neglect. *746 Additionally, ACS contends that there is an issue of fact in this case as to whether the respondent mother failed to take Kailynn to the doctor for several days because she did not believe it was medically necessary or because she was in fear of losing her job.
If the sole allegation of neglect in this case were inadequate supervision in that Ms. L. left Kailynn on the bed briefly, resulting in a fall and injury to Kailynn’s head, the court would consider granting summary judgment since there is no issue of fact raised by ACS as to the circumstances of the fall and resulting injury. The sole issue remaining would be the legal question of whether that action was sufficient for a neglect finding. A dismissal based on summary judgment might well be appropriate in that situation as petitioner has failed to cite any case involving similar facts where a neglect finding was made.[2] Given that the progress notes indicated that the mother took the protective steps of putting pillows around Kailynn on the bed and was only going down the hall briefly to use the bathroom, it would be difficult for this court to find that this accidental fall fell below “a minimum degree of care.” (Family Ct Act § 1012 [f] [i] [emphasis added]; Nicholson v Scoppetta, 3 NY3d 357, 370 [2004]; see also Child Protective Services Program Manual, ch XI, § K.2 [b] [i] at 86 [“Where a parent or other person legally responsible leaves the infant unattended and an aggravating factor is present, the parent or other person legally responsible has failed to exercise a minimum degree of care ... If there is not an aggravating factor, then there is no maltreatment, irrespective of whether the infant is harmed *747 or not”];[3] see also New York State Office of Children & Family Services, Local Commissioners Memorandum, 13-OCFS-LCM-01 [Jan. 16, 2013].)
However, there is also an allegation of medical neglect in the petition based primarily on the respondent’s decision not to take Kailynn to the doctor for four days following her fall. There are factual issues regarding this allegation which could only be determined at a trial, namely what, if any, observations the respondent made as to any bump or swelling on Kailynn’s head each day and what the factors were that contributed to her decision about if, and when, medical attention was needed. Therefore, the motion for summary judgment is denied.
Dismissal of the Petition Pursuant to Family Court Act § 1051 (c) in That No Further Aid of the Court is Necessary
The court now turns to the second prong of respondent’s motion which seeks dismissal pursuant to Family Court Act § 1051 (c) in that no further aid of the court is required. Family Court Act § 1051 relates generally to various circumstances where courts may sustain or dismiss an article 10 petition. Section 1051 (c) contains two circumstances in which petitions may be dismissed: (1) “[i]f facts sufficient to sustain the petition . . . are not established” or (2) “if, in a case of alleged neglect, the court concludes that its aid is not required on the record before it.” Under either circumstance, the court “shall dismiss the petition and shall state on the record the grounds for dismissal.” (Family Ct Act § 1051 [c].) The plain language of the statute implies that the “aid of the court” prong may be granted in any *748 neglect case prior to a fact-finding hearing as long as there is sufficient basis for the court’s conclusion “on the record before it.” That record could include the court file, prior court appearances on the case and the affidavits and exhibits attached to a motion. The statutory language further supports this interpretation by referring to cases of “alleged neglect,” indicating that such a motion is not available once an adjudication has occurred. The plain language also establishes that the existence of neglect is not a bar to dismissal under this second prong. Given this statutory language, the legislature clearly intended section 1051 (c) to preserve the rehabilitative purpose of article 10 by acknowledging that, even where a parent may have made an error in judgment which constitutes neglect under the law, the mistake may have been an isolated instance and/or the parent may have sufficiently learned from that mistake prior to the fact-finding hearing to the extent that further involvement of the court and the child welfare system is unnecessary.
Petitioner has suggested that the appellate case law interpreting section 1051 (c) constrains this court from dismissing this petition prior to a fact-finding hearing. However, a careful review of the case law suggests otherwise. In fact, there are a limited number of cases where family courts have faced a motion under this second prong of section 1051 (c) prior to a fact-finding hearing.
Many of the appellate cases in which section 1051 (c) is cited, and in which dismissals have been reversed, involve appeals of the Family Court’s dismissals of cases based on the behavior of ACS in their presentment of the petition at fact-finding. (See Matter of Jasmine S. [Mirayah S.], 1 AD3d 257, 259 [1st Dept 2003] [finding error in Family Court’s mid-fact-finding dismissal due to various delays by petitioner since failure to prosecute was not willful]; Matter of Melissa B., 225 AD2d 452, 452-453 [1st Dept 1996] [dismissal of neglect petition found to be “far too harsh a remedy for the negligible lateness of petitioner’s counsel”]; Matter of Rhonda T., 99 AD2d 758, 758-759 [2d Dept 1984] [dismissal as sanction for improper behavior of ACS reversed].) These dismissals were reversed because there was no indication that Family Court Act § 1051 (c) was intended to be used as a sanction against the petitioning agency.
There are also a number of appellate cases reversing Family Court dismissals under the first prong of section 1051 (c) where the Family Court found that “facts sufficient to sustain the *749 petition under this article [were] not established” without allowing for a full fact-finding hearing or other record to be developed by ACS. (See Matter of Jayann B. [David K.], 85 AD3d 911, 912 [2d Dept 2011] [allegations were sufficient to require a fact-finding hearing to be held]; Matter of Latanya C., 37 AD3d 716 [2d Dept 2007] [dismissal mid-fact-finding due to delays and court’s determination that witness was not credible was premature]; Matter of Dutchess County Dept. of Social Seims, v Peter B., 224 AD2d 617 [2d Dept 1996] [dismissal based on court’s determination that there was no future risk of sex abuse was improper without a fact-finding hearing]; Commissioner of Social Servs., 186 AD2d 33, 34 [1st Dept 1992] [dismissal for failure to state a cause of action reversed; finding of neglect was possible so fact-finding should have been held]; Matter of Emanual David R., 119 AD2d 677, 677 [2d Dept 1986] [dismissal for failure to make out a prima facie case reversed because petitioner had not yet rested].) These cases are all clearly distinguishable from the instant case in that the lower courts precipitously dismissed the cases based on insufficient proof that could ultimately have been established had the fact-finding hearings been allowed to proceed to completion.
The decision in Matter of Jonathan M. (306 AD2d 413, 414 [2d Dept 2003]) contains language that “[o]nly at the conclusion of a fact-finding hearing can the Family Court dismiss the petitions upon determining that its aid is not required on the record before it.” However, this language appears only to be dicta, given the specific facts before the Appellate Division. In Jonathan M., “[r]ather than holding a fact-finding hearing, the Family Court dismissed the petitions stating that sufficient facts had not been established to sustain the petitions” (id. [emphasis added]). Thus, the lower court’s decision was actually based on the first prong of section 1051 (c), sufficiency of the evidence, and a fact-finding hearing was clearly required. This court does not believe the Second Department intended Jonathan M. to prevent a dismissal on the second prong of section 1051 (c) where “the record” required by the statute does exist prior to a fact-finding hearing and it establishes that the aid of the court is not required. Rather, such an interpretation would result in this court having to conduct an unnecessary fact-finding hearing to reach the same conclusion, thus needlessly spending the parties’ and this court’s limited time and extending ACS’s intrusion when it is not serving any useful purpose to this family.
*750 It is significant to note that the heading of Family Court Act § 1051 is “[sustaining or dismissing petition” rather than “orders after fact-finding hearing.” Similarly, section 1051 (c) refers to the “record before” the court, not the record at the fact-finding hearing or the evidence at trial. In fact, at no point in the body of section 1051 (c) do the words “fact-finding hearing” appear. If the legislature had intended this relief to be limited to the end of a fact-finding hearing, it would have been simple to include that language.
Support for the proposition that a fact-finding hearing is not the only way a record sufficient for dismissal under the second prong of section 1051 (c) can be established is found in Matter of Angel R. (285 AD2d 407 [1st Dept 2001]). In that case, the Family Court dismissed a neglect case because of the petitioner’s lack of readiness to proceed at the fact-finding. While the First Department did not condone the dismissal on this basis, it did find dismissal to be proper because the court’s aid was not required given that the two older children were living in Puerto Rico with their grandmother and the youngest child was already under the petitioner’s supervision. Thus, the record below was found sufficient to establish the second prong of section 1051 (c) even without a fact-finding hearing.
There is guidance in the factors to consider in deciding whether to dismiss this case due to the court’s aid not being required in the appellate decisions that squarely address this prong of section 1051 (c).[4] (Compare Matter of Eustace B. [Shondella M.], 76 AD3d 428, 428 [1st Dept 2010] [court’s aid not needed as the court determined no basis for supervision or for respondent’s participation in referrals, the domestic violence was an isolated incident and the relationship had ended], with Matter of Naomi S. [Hadar S.], 87 AD3d 936, 937 [1st Dept 2011] [Family Court appropriately denied respondent’s motion to dismiss “since the dangers the mother posed to the child had not passed and thus the court’s continued aid was required”].)
The Second Department’s decision in Matter of Kayden H. (Kareena H.) (104 AD3d 764 [2d Dept 2013]) is particularly illustrative here. The Appellate Division found that, “although facts sufficient to sustain the petition were established,” the *751 Family Court should have dismissed the petition pursuant to Family Court Act § 1051 (c) because the mother and grandmother had completed all of the services ACS had requested of them, the child was returned to the mother during the course of the proceeding, and the ACS progress notes noted “no safety concerns.” {Id. at 765-766.) The Second Department concluded that “[t]he foregoing demonstrates that the incident on which the petition was based was an isolated one, that the mother and the grandmother had been rehabilitated, and that the child [was] no longer at risk of being neglected.” {Id. at 766.)
In a recent Second Department decision, Matter of Vernice B. (Patton) (129 AD3d 714, 715 [2d Dept 2015]), which was clearly decided under the second prong of section 1051 (c), the Court reversed a mid-fact-finding dismissal because it disagreed with the Family Court’s conclusion that its aid was not required since it was based solely on the subject child’s not being fully receptive to services. The Court found that ACS should have been allowed to fully develop its record given that the child’s resistance to services was not the same as services not being required. These facts are certainly distinguishable from the case at hand which is much more akin to the scenario in Kay den H. (See also Matter of Phillips N. [Joy N.], 104 AD3d 690, 691 [2d Dept 2013] [dismissal under section 1051 (c) properly denied where the mother never admitted responsibility for her daughter’s injuries].)
As of this date, the respondent has actively participated in services and will have completed her parenting class in two days from today, and there are no ongoing safety concerns. (See ACS court report, dated May 2, 2016.)[5] In determining this motion, the court is accepting as true ACS’s contention that Ms. L. considered the fact that she was still on probation at work in weighing whether and when to take her daughter to the doctor. There is no working parent who has not engaged in this *752 difficult balancing act. Given that the respondent is a single mother who is the sole wage earner for her family of four, the court cannot find that this consideration indicates a need for further court involvement here. Ms. L. did take her daughter to the doctor once it became clear that the injury was not resolving as she expected, given her limited medical training. It is also significant that once the mother took Kailynn for treatment, none was needed and there was no lasting effect from the injury. Additionally, Ms. L. has demonstrated her love, dedication and concern for her children and their well-being to all who have observed her parenting. This has been true from the moment she brought her daughter to the hospital and promptly expressed her willingness to do whatever ACS asked so she could keep her children at home and learn from this experience. The allegations in this petition do not “indicate a likelihood of future neglect,” and the respondent mother has “undertaken remedial action and . . . completed all services that could have been part of any dispositional recommendations.” (Matter of Robert W. [Francine H.], 30 Misc 3d 1231 [A], 2011 NY Slip Op 50304[U], *10 [Fam Ct, Kings County 2011, Olshansky, J.].) This court finds that no further legitimate purpose underlying article 10 would be served by continuing ACS’s involvement with this family.
Therefore, upon this court’s careful review of the record which includes the court file, papers submitted including exhibits, and arguments by counsel, the respondent’s motion for summary judgment is denied but the motion to dismiss pursuant to Family Court Act § 1051 (c) is granted on the ground that the court’s aid is not required.
Wherefore, the petition is dismissed with prejudice.

. The 2015 petition states that ACS had filed a neglect petition against Ms. L. in 2012 for inadequate guardianship and substance abuse. However, ACS did not allege any harm or risk of harm as a result of these allegations, nor did they provide any information or evidence in their opposition papers regarding the specifics or outcome of that filing.

. ACS has cited two cases in support of its contention that leaving the child alone on the bed briefly is sufficient for a neglect finding: Matter of Samuel D.-C. (40 AD3d 853, 854 [2d Dept 2007] [finding neglect where a “father left the three-week-old child unattended in an unheated vehicle for approximately 15 minutes” in November]), and Matter of Febles v Dutchess County Dept. of Social Servs. Child Protective Servs. (68 AD3d 993, 993-994 [2d Dept 2009] [finding that the parent’s “failure to provide her seven-year-old son with proper supervision placed the physical condition of her son in imminent danger of becoming impaired” where the “child was left alone in a running vehicle for approximately 20 minutes while the petitioner went into a store”]). The instant matter is, perhaps, more similar to Matter of Brandyn P. (278 AD2d 533, 535 [3d Dept 2000]), in which the Family Court’s dismissal of an abuse petition was upheld after the trial court found “the paucity of other proof of abuse, found no history of abuse and viewed respondent’s reaction to and explanation of the incident as consistent with an ‘innocent accident.’ ”

. The aggravating factors include,
“1) The infant was left unattended for an unreasonable amount of time under the circumstances.
“2) The physical condition of the sleeping area was unsafe.
“3) The contents of the sleeping area created an unsafe condition.
“4) The size of the sleeping surface in relation to the occupants (person, pets and/or objects) created an unsafe condition.
“5) The temperature of the room or the sleeping area, including the infant’s clothing and bed coverings used, in which the infant was cared for was so extreme as to make it unsafe.
“6) The parent or other person legally responsible was under the influence of alcohol or legal or illegal drugs to the extent that such person’s judgment or physical ability was impaired to the point that such person was unable to adequately supervise the infant.
“7) Another condition that a reasonable person would understand to place an infant at risk of harm.”'

. The court has also considered but found little guidance in the case Matter of Chandler D. (16 AD3d 684, 684 [2d Dept 2005]), as the Appellate Division gives no case facts or specific information as to why it found error where the Family Court dismissed a neglect petition under section 1051 (c) without a fact-finding hearing.

. While the latest report states that the home is “disorganized,” this is not a sufficient basis to continue court intervention in this family. “[I]n deciding whether to authorize state intervention . . . [the] focus [should be] on serious harm or potential harm to the child, not just on what might be deemed undesirable parental behavior.” (Nicholson v Scoppetta, 3 NY3d 357, 369 [2004].) Quite notably, this same report indicates that the “home is free of safety hazards,” that there are “no safety concerns,” that Ms. L. is actively participating in classes and submits all of her homework for each session, and is “overall compliant with services.” Additionally, the respondent submitted a letter from her parenting program which states that she “has consistently participated in class sharing her experiences” and has “completed projects and done the required assignments.”